NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                            :
LLOYD M. ROYAL, III         :
                            :      Civ. No. 20-12345 (RMB)
            Petitioner      :
                            :
    v.                      :      **OPINION**
                            :
WARDEN ORTIZ,               :
                            :
            Respondent      :
_____ :

BUMB, United States District Judge

　　Petitioner Lloyd M. Royal, III is a prisoner who was incarcerated in the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix") when he filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging his loss of good time credits as a sanction following a prison disciplinary hearing. (Pet., ECF No. 1.) Respondent filed an answer to the petition on November 10, 2020 (Answer, ECF No. 7), and Petitioner filed a reply brief on March 5, 2021. (Reply Brief, Dkt. No. 10.) The Court will decide the petition on the briefs without oral argument, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons discussed below, the Court dismisses the petition based on procedural default for failure to exhaust administrative remedies, and, alternatively, would deny the petition on the merits.

I.  INTRODUCTION

Petitioner contends that his finding of guilt for threatening another with bodily harm, in violation of Bureau of Prisons ("BOP") Code 203, should be reversed because he did not threaten Officer Lebron with physical harm and, at most, Petitioner's conduct could be described as insolence toward a staff member, in violation of Code 312. (Pet., Dkt. No. 1 at 10-11.)

In opposition to the petition, Respondent asserts that Petitioner received all of the procedural safeguards to which he was entitled, and the finding of guilt is supported by the report of a staff member who described how Petitioner came toward him with a clenched fist in an aggressive and threatening manner. (Answer, Dkt. No. 7 at 6.)

In reply to Respondent's answer, Petitioner's primary argument is that he was falsely led to believe that he could not obtain statements from his requested witnesses, R. Scarcini LPN and Nurse Barcelona, and the omitted testimony had the potential to change the outcome of the hearing. (Reply Brief, Dkt. No. 10 at 5-6.) For the reasons discussed below, the Court will dismiss the petition as procedurally defaulted and, alternately, deny the petition on the merits.

II. STATEMENT OF FACTS

Petitioner is serving a 360-month term of imprisonment imposed on July 19, 2010, in the United States District Court for

the District of Maryland for conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 371; sex trafficking, in violation of 18 U.S.C. § 1591; conspiracy to distribute controlled substance, in violation of 21 U.S.C. § 846; and distribution of controlled substance to persons under the age of twenty-one, in violation of 21 U.S.C. § 859. (Declaration of Corrie Dobovich ("Dobovich Decl.," Dkt. No. 7-2); Ex. 1, Dkt. No. 7-2 at 6-7.) Petitioner's projected release date is August 5, 2034. (Id. at 7.)

On September 25, 2019, at FCI Fort Dix, Petitioner was issued an incident report that charged him with threatening another person, a violation of BOP Disciplinary Code 203, threatening assault (Code 224A), and insolence (Code 312). (Dobovich Decl., Ex. 3, Dkt. No. 7-2 at 12.) Officer Lebron alleged,

> [o]n September 25, 2019 at approximately 8:00 am, Inmate Royal, Lloyd, register Number 50466-037 was walking out of medical records office. Inmate Royal all of a sudden looks at me W. Lebron and says "ARE YOU SMIRKING AT ME? WHY ARE YOU SMIRKING AT ME?" Inmate Royal then turned around, clenched his fist, and came towards me in an aggressive and threatening manner. At this moment I stepped back and another staff member had to jump between both of us, ordered inmate Royal to back down and to leave health services. Inmate Royal was then escorted out of the office. Inmate Royal turned in his ID and Activities Lieutenant notified of the incident. There was no physical contact in this incident.

(Dobovich Decl., Ex. 3, ¶ 11, Dkt. No. 7-2 at 12.)

A staff member delivered the incident report to Petitioner and advised Petitioner of his rights in connection with the disciplinary process. (Dobovich Decl., Ex. 3, ¶¶ 14-16, Dkt. No. 7-2 at 12.) Petitioner indicated that he understood his rights and did not request the appearance of witnesses at the hearing. (Id., ¶¶ 24-25.)

At a hearing before the Unit Discipline Committee ("UDC") on October 1, 2019, Petitioner explained that on September 25, 2019, at 8:00 a.m., he was at the medical department for an appointment when

> Officer Lebron took my pass and erased my soft shoe pass. I asked him for my original pass which he never gave back. I was walking away and heard him laugh so I turned around and asked him 'are you smirking at me?' My intention was not to threaten him. Just to ask him a question.

(Id., ¶ 17.) At the conclusion of the hearing, the UDC referred the incident report to a Discipline Hearing Officer ("DHO"). (Id., ¶¶ 19-20.) Petitioner was then provided with a "Notice of Discipline Hearing Before the DHO". (Id., Ex. 5, Dkt. No. 7-2 at 15.) Petitioner indicated that he wanted Ms. Dykes to serve as his staff representative, and he wanted to call two contract staff members as witnesses to the incident. (Id. at 17.) Petitioner also acknowledged his rights by signing the "Inmate Rights at Discipline Hearing" form. (Id., Ex. 4, Dkt. No. 7-2 at 15.)

4

The hearing before a DHO was held on October 7, 2019. (Dobovich Decl., Ex. 7, Dkt. No. 7-2 at 21.) Petitioner signed a form waiving his right to request a staff representative and waiving his right to call witnesses. (Id., Ex. 6, Dkt. No. 7-2 at 19.) At the hearing, Petitioner agreed the incident report was true and said "I was wrong. I wish I would do better, my intention was not to threaten him." (Id., Ex. 7, ¶ III.B, Dkt. No. 7-2 at 21.) In making his decision, the DHO considered Petitioner's statement and the witness/staff representative waiver form. (Id., ¶ III.D.) The DHO determined that Petitioner committed the prohibited act of threatening another with bodily harm, in violation of Code 203. (Id., ¶¶ V, VI.) The DHO imposed sanctions including: (1) disallowance of 27 days of good conduct time; (2) loss of commissary privileges for 180 days; and (3) 30 days of disciplinary segregation, suspended for 180 days pending clear conduct. (Id.) On December 30, 2019, Petitioner received a copy of the DHO report. (Id., ¶VI.)

In November 2019, Petitioner filed a Regional Administrative Remedy Appeal (Form BP-10) challenging the outcome of his disciplinary hearing. (Id., Ex. 2, Dkt. No. 7-2 at 9-10.) The Northeast Regional Director responded to the BP-10 on January 8, 2020, finding that (1) the DHO reasonably determined Petitioner committed the offense of threatening bodily harm; (2) a review of the disciplinary hearing "revealed no due process concerns or

5

deviations from policy"; (3) the incident report provided sufficient notice of the charge and allowed him to present a defense; and (4) the DHO based his decision on the greater weight of the evidence and imposed sanctions consistent with the severity of the offense. (Dobovich Decl., Ex. 2, Dkt. No. 7-2 at 10.) Petitioner did not appeal the Regional Director's decision to the BOP's Central Office. (Dobovich Decl. ¶ 4., Dkt. No. 7-2 at 2.)

III. DISCUSSION

    A.    <u>Exhaustion of Administrative Remedies</u>

Before a federal prisoner can seek habeas relief in district court under 28 U.S.C. § 2241, he must first exhaust his administrative remedies. <u>Vasquez v. Strada</u>, 684 F.3d 431, 433 (3d Cir. 2012); <u>Moscato v. Fed. Bureau of Prisons</u>, 98 F.3d 757, 760-62 (3d Cir. 1996). When a federal prisoner challenges the outcome of a prison disciplinary hearing, he may begin by appealing directly to the Regional Director. 28 C.F.R. § 542.14(d)(2). If he is unsatisfied with the Regional Director's response, he may appeal to General Counsel in the BOP Central Office. <u>Id.</u> at § 542.15(a). The exhaustion requirement "is diligently enforced by the federal courts" and the futility exception applies only in "narrowly-defined circumstances[.]" <u>Brown v. Grondolsky</u>, No. 09-3290 (RMB), 2009 WL 2778437, at *1-2 (D.N.J. Aug. 31, 2009) (citation omitted).

Respondent contends that Petitioner failed to exhaust his administrative remedies prior to filing his habeas petition

6

because he did not appeal the Regional Director's decision to the BOP Central Office. (Answer, Dkt. No. 7 at 11-14.) Petitioner does not claim that he appealed to the BOP Central Office, but he suggests that BOP staff and its records are untrustworthy. (Reply Brief, Dkt. No. 10 at 9-11.)

Pursuant to 28 C.F.R. § 542.15(a), to exhaust administrative remedies, a federal prisoner must appeal the Regional Director's decision "within 30 calendar days of the date the Regional Director signed the response." The Regional Director signed the response to Petitioner's appeal on January 8, 2020. (Dobovich Decl., Ex. 2, Dkt. No. 7-2 at 10.) According to BOP records, and undisputed by Petitioner, he did not appeal to the Central Office. (Dobovich Decl., ¶ 4, Dkt. No. 7-2 at 2.)

In the absence of any evidence from Petitioner that he exhausted his administrative remedies by timely appealing to the BOP Central Office or that staff prevented him from doing so, the Court finds that Petitioner failed to exhaust administrative remedies that were available to him.

> [A] federal prisoner who challenges a disciplinary proceeding within a federal institution, fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice.

Moscato v. Fed. Bureau of Prisons, 98 F.3d at 762. Petitioner has not alleged cause and prejudice to excuse his failure to appeal to the Central Office. Therefore, the Court will dismiss the petition as procedurally defaulted.

    B.    Due Process Required for Prison Disciplinary Hearings

In Wolff v. McDonnell, 418 U.S. 539, 563-71 (1974), the Supreme Court announced the procedural requirements that a disciplinary hearing must satisfy before an inmate may lose good conduct time credits. A prison disciplinary hearing comports with due process if the inmate is afforded: (1) the right to appear before an impartial decision-maker; (2) written notice of the charges at least 24 hours in advance of the hearing; (3) an opportunity to call witnesses and present evidence, as long as doing so would not threaten institutional safety or correctional goals; (4) assistance from a representative, if the inmate is illiterate or complex issues are involved; and (5) a written decision by the factfinder detailing the evidence relied upon and the rationale for the disciplinary action.

Respondent construes the petition as raising a claim of insufficient evidence that Petitioner threatened another person with bodily harm in violation of Code 203. The standard of proof required to uphold a DHO's decision is "some evidence" in support of the decision. Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 447 (1985)). Under this standard,

8

a reviewing court is not required "to exam[ine] the entire record, independently assess the credibility of witnesses, or even weigh the evidence." Cardona v. Lewisburg, 551 F. App'x 633, 637 (3d Cir. 2014) (citing Hill, 472 U.S. at 455). "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56; see also Denny v. Schultz, 708 F.3d 140, 145 (3d Cir. 2013) ("[A] reviewing court need only find that the DHO's decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause.") (quoting Hill, 472 U.S. at 456).

    C.    Alternative Decision on the Merits of the Petition

The sole claim Petitioner raised in his petition is that he did not threaten Officer Lebron with physical harm and, at most, his conduct could be described as insolence toward a staff member. BOP Code 203 prohibits "[t]hreatening another with bodily harm or any other offense" 28 C.F.R. § 541.3 (Table 1). The Third Circuit Court of Appeals addressed BOP Code 203 in Estrada v. Williamson, 240 F. App'x 493, 494 (3d Cir. 2007). The court held

> [g]iven Estrada's status as a prisoner, his size, his admittedly loud and boisterous tone of voice, and the fact that he continually stepped towards the female employee during the incident, Estrada should have realized that his actions could constitute a violation of Code 203.

Id. at 494. The Court explained,

9

> "[p]risoners, unlike free men, must well know that they are considered potentially dangerous men and must expect to be highly regimented. In such cases the law requires less in the way of notice, and places a greater burden on the individual to make inquiry or ask permission before acting."

Estrada, 240 F. App'x at 494 (quoting Meyers v. Alldredge, 492 F.2d 296, 310 (3d Cir. 1974) (quoting Landman v. Royster, 333 F. Supp. 621, 655-56 (E.D. Va. 1971)). Petitioner's conduct here, clenching his fist and going toward Officer Lebron in an aggressive and threatening manner while asking Lebron why he was smirking, is sufficient to constitute a Code 203 violation in the highly regimented context of prison life.

In Petitioner's reply brief, he raises a new basis for relief, that he was misled to believe he could not call contracted medical staff as witnesses. A "'moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief.'" Judge v. U.S., 119 F.Supp.3d 270, 284 (D.N.J. 2015) (quoting D'Allessandro v. Bugler Tobacco Co., Civil Action No. 05-5051, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007)) (quoting Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 978 F.2d 1318, 1327 n. 11 (3d Cir. 1992)).

Even if Petitioner had raised this claim in the petition, it would not entitle Petitioner to relief because he admitted to the DHO that he engaged in the conduct alleged in the incident report.

10

In his reply brief, Petitioner submits that Nurse Scarinci would have testified that he did not raise his fist or threaten Officer Lebron, and Petitioner does not allege specifically how Nurse Barcelona would testify. (Reply Brief, Dkt. No. 10 at 5-6.) The incident report does not allege that Petitioner raised his fist or made an actual threat, only that he clenched his fist and his manner was aggressive and threatening. Therefore, Nurse Scarinci's testimony would not negate Petitioner's admission to the conduct alleged in the incident report. The Court notes that Petitioner was given a suspended sanction for disciplinary segregation because he took responsibility for his conduct. (Dobovich Decl., Ex. 3, ¶ VIII Dkt. No. 7-2 at 23.) Thus, in the alternative to dismissal based on procedural default, the Court would deny the petition on the merits. See Crosby v. Warden Lewisburg USP, 788 F. App'x 816, 818 (3d Cir. 2019) (affirming denial of petition where DHO refused to call witnesses but Petitioner failed to explain the relevance of the witness testimony in light of his admission to the misconduct).

IV.   CONCLUSION

For the reasons discussed above, the Court will dismiss the petition as procedurally defaulted and, alternatively, deny the petition on the merits.

An appropriate order follows.

Date: **June 15, 2021**

                                                s/Renée Marie Bumb
                                                **RENÉE MARIE BUMB**
                                                **United States District Judge**